Matthew T. Christensen, ISB: 7213
Aubrey Richardson, ISB: 9909
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho 83703
Phone: (208) 384-8588
Fax: (208) 853-0117
mtc@angstman.com
aubrey@angstman.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>FARMERS GRAIN, LLC,<br><br>Debtor. | Case No. 17-00450-TLM<br>Chapter 11 |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN PREPETITION WAGES, SALARIES, AND REIMBURSABLE EMPLOYEE EXPENSES, (B) PAY AND HONOR EMPLOYEE VACATION AND SICK LEAVE, (C) REMIT WITHOLDINGS & DEDUCTIONS, AND CONTINUE EMPLOYEE COMPENSATION AND EMPLOYEE BENEFIT PROGRAMS.**

Farmer's Grain, LLC, as debtor in possession ("Debtor"), submits this motion ("Motion") for entry of interim orders, authorizing the Debtor to (a) pay certain prepetition wages, salaries, and reimbursable employee expenses, and (b) pay and honor employee medical and similar

benefits (Collectively the "Employee Obligations"). In support of this Motion, the Debtors respectfully represent:

A. **General Background**

1. On April 18, 2017, the Debtor filed a Petition under Chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. No request has been made for the appointment of a trustee or an examiner in this Chapter 11 case. No official committee has yet been appointed by the Office of the United States Trustee.

3. The Debtors operate a grain elevator facility in Nyssa, Malheur County, Oregon. Specifically, the Debtor receives whole corn and barley from Idaho and Oregon farmers in the area surrounding its location, processes and grinds the raw product, stores the product in silos, and then sells it in the marketplace, primarily to dairies.

4. As of the Petition Date, the Debtors have approximately twenty (20) employees, all of whom are based in Malheur County, Oregon (collectively the "Employees"). Nineteen (19) of the employees perform work on an hourly basis, and one is salaried. The one salaried employee brokers with suppliers and negotiates sales contracts. Of the hourly employees, six (6) work in the yard performing labor or doing maintenance or repair of vehicles; five (5) drive commercial trucks picking up and delivering product; three (3) perform secretarial, office, bookkeeping and/or accounting functions; and two (2) are responsible for cleaning and maintenance of the facilities. All employees are essential to the continued operation of the Debtor's business.

5. For the year ending 2016, the Debtor's gross income was $31,226,585.00. Due to several losses that year and previously, the Debtor's net income after all expenses was $-10,167,393.00.

6. As of the Petition Date, the Debtor's outstanding debt is approximately $15,554,529.66.

B. **Categories of Claims**

7. The Debtor seeks by this Motion an Order allowing it to pay certain broad categories of expenses related to employee compensation and benefits.

    a. **"Employee Compensation"**: Of the twenty (20) total employees (collectively the "Employees") approximately seventeen (17) full-time employees (collectively, the "Full Time Employees") and three (3) part-time employees (collectively, the "Part-Time Employees"). None of the Employees is represented by a union. In the ordinary course of business, the Debtor pays Employees wages or salaries depending on the services provided by the Employee to the Debtor. The Debtor also allows Employees to request and receive draws between payroll dates, reimburses Employees for legitimate business expenses, and provides sick leave and paid vacation time. The following summarizes the various types of employee compensation offered by the Debtors (collectively, the "Employee Compensation").

        i. **Salaries and Wages.** All Employees are paid monthly in arrears, either by direct deposit or manually issued check. The Debtor's next scheduled payroll date is on or about May 5, 2017, for the pay period from April 1, 2017 to April 30, 2017. On average, the Debtor's monthly gross payroll expense for Employees is approximately $90,000. As of the Petition Date,

the Debtor believes approximately $40,000 is unpaid on account of wages, salaries and other compensation earned prior to the Petition Date ("Unpaid Wages") since April 1, 2017. Nonetheless, some Employees may be entitled to compensation for services provided before April 1, 2017, because (a) discrepancies could exist as to amounts paid; or (b) some payrolls checks issued prior to the Petition Date may not have been presented for payment or may not have cleared the banking system as of the Petition Date. The Debtors do not believe that any individual Employee is entitled to Unpaid Wages exceeding the priority cap of $12,850.00 set out in § 507(a)(4) of the Bankruptcy Code, and thus seek authority to pay any Unpaid Wages in the ordinary course of business and consistent with past practices.

ii. **Employee Draws.** On or about the fifteenth (15) day of each calendar month, the Debtor pays certain employees a draw or advance against his or her upcoming paycheck (otherwise due before the fifth of the following calendar month) (the "Employee Draws"). Currently, three Employees regularly receive Employee Draws. The Employee Draws are a courtesy extended to Employees to help equalize their income, but the Employees receiving them have come to rely on that alternate pay period timing. Because the Employee Draws occur near the middle of each pay period (and thus earnings period), the effect is the same as if the Debtor paid those Employees semi-monthly because the Employee Draws are roughly equivalent to, or less than, accrued but unpaid wages as of the date of the

Employee Draw. Although all Employee Draws requested prepetition have been issued by direct deposit, there is a possibility that Employee Draws could be pending because they have not yet cleared the banking system or a dispute or error in the amount transmitted could arise.

iii. **Reimbursable Expenses.** Prior to the Petition Date and in the ordinary course of its businesses, the Debtor reimbursed Employees for approved, legitimate expenses incurred on behalf of the Debtor in the scope of the Employee's employment (the "Reimbursable Expenses"). The Debtor reimburses Reimbursable Expenses to Employees after processing and approving expense reports containing receipts for all items to be reimbursed. Reimbursement is thus contingent on the Debtor's determination that the charges are for legitimate, reimbursable business expenses. In aggregate, the Debtor pays approximately $1,000.00 per month on account of Reimbursable Expenses. Although the Debtor requests that Employees submit reimbursement requests promptly, circumstances sometimes cause delay. It is therefore difficult for the Debtor to precisely calculate the amount of Reimbursable Expenses outstanding as of the Petition Date. Based on historical practices, the Debtor estimates that, as of the Petition Date, approximately $500.00 in total Reimbursable Expenses remain unpaid. Employees incurred Reimbursable Expenses as business expense on the Debtor's behalf and with the understanding that they would be reimbursed. To avoid harming Employees who incurred the Reimbursable Expenses, the Debtor requests

authority to (a) continue reimbursing the Reimbursable Expenses in accordance with prepetition practices and honor any prepetition obligations related thereto; (b) modify their prepetition policies relating to expense reimbursement as they deem appropriate; and (c) pay all Reimbursable Expenses to Employees that either (i) accrued prepetition or (ii) accrue post-petition but relate to the prepetition period.

iv. **Accrued Vacation Days.** The Debtor provides vacation time to all Full-Time Employees as a paid time-off benefit (the "Vacation Time"). Beginning on the first anniversary of an Employee's hire date ("Anniversary Date"), Employees are entitled to Vacation Time at the following rates:

> First and second Anniversary Date: One week
>
> Third and fourth Anniversary Date: Two weeks
>
> Fifth Anniversary Date and beyond: Three weeks

When an Employee elects to take Vacation Time, he or she is paid his or her regular salaried or hourly rate based on a full-time workweek. If unused, Vacation Time does not accrue from one year to the next. For that reason, an Employee is entitled to a cash payment for unused Vacation Time before each Anniversary Date. The Debtors request that they be authorized, but not directed, to continue to honor their Vacation Time policies in the ordinary course of business, and to honor and pay any prepetition amounts related that policy.

    v. **Accrued Sick Leave.** In addition, Full-Time Employees are eligible for sick leave due to illness or injury ("Sick Leave"). Each Full-Time Employee receives forty (40) hours of Sick Leave on the first day of each calendar year. No Sick Leave accrues from year to year, meaning that if it is unused on December 31, it is forfeited. The Debtor requests that it be authorized, but not directed, to continue to honor its Sick Leave policies in the ordinary course of business, and to honor and pay any prepetition amounts related to that policy.

b. **Workers' Compensation**

    i. The Debtor provides workers' compensation insurance for its Employees at the statutorily required level ("Workers' Compensation Program"). As part of the Workers' Compensation Program, eligible Employees receive a portion of their weekly wages, up to a maximum specified by law.

    ii. For the claims administration process to operate in an efficient manner and to ensure that the Debtor complies with applicable state law, the Debtor must continue to assess, determine, and adjudicate claims. Accordingly, the Debtor seeks authority to (a) continue to maintain the Workers' Compensation Program in the ordinary course of business, and (b) pay any related prepetition amounts, including, without limitation, worker's compensation claims, deductibles, premiums, and fees owed as such amounts become due in the ordinary course of the Debtor's business.

c. **"Deductions and Withholdings".**

    i. **Non-Tax Related Deductions.** During each applicable payroll period, the Debtor routinely deducts certain amounts from Employee's paychecks, including, without limitation: garnishments, child support, legally ordered deductions and miscellaneous deductions (collectively, the "Deductions"). The Deductions are subsequently forwarded to the appropriate third party recipients. Generally, the Deductions are nominal or nonexistent, though do vary. As of the Petition Date, the Debtor estimate that it is holding no accrued but unpaid Deductions. To the extent that the Debtor should have collected and paid Deductions prior to the Petition Date, the Debtor seeks authority to collect and forward such Deductions to the applicable third-party recipients. In addition, the Debtor seeks authority to continue forwarding Deductions to the appropriate third-party recipients on a post-petition basis, in the ordinary course of business, and consistent with past practice. The Deductions represent earnings that judicial authorities or Employees have designated for deduction from Employee's paychecks and thus, may not be property of the Debtor's estate. If the Debtor does not remit the Deductions appropriately, Employees could experience hardship, and for the judicially-ordered Deductions, such as child support, Employees may face legal action.

    ii. **Payroll Taxes.** The Debtor is required by law to withhold from Employee's paychecks amounts related to U.S. federal, state, local and foreign income taxes, as well as Social Security and Medicare taxes, in all cases, for remittance to the appropriate taxing authority (collectively, the

"Withheld Amounts"). In addition, the Debtor is required by applicable statutory authority to pay from its own funds Social Security and Medicare taxes, in all cases, for remittance to the appropriate taxing authority (collectively, the "Withheld Amounts"). In addition, the Debtor is required by applicable statutory authority to pay from its own funds Social Security and Medicare taxes, and based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (the "Employer Payroll Taxes"), and together with the Withheld Amounts, the "Payroll Taxes"). On average, the Debtor estimates it withholds approximately $15,000 in Payroll Taxes, including both Employee and employer portions. Accordingly, by this Motion, the Debtors seek authority to continue to honor and process all prepetition Payroll Tax obligations

## BASIS FOR RELIEF

A. <u>Authority and Cause Exist for the Court to Authorize the Payment of Prepetition Claims in Circumstances Such As These.</u>

8. Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business, thus facilitating its reorganization. *See e.g., Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286, 311 (1982).

9. In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in Bankruptcy Code sections 1107 (giving the debtor in possession the

rights of trustee), 1008 (permitting continued operation of the debtor's business), 363(b) (permitting use of property of the estate in the ordinary course of the debtor's business), and 105(a) (vesting authority in the Bankruptcy Court to issues orders necessary or appropriate to carry out the provisions of the Code).

10. Courts have authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See e.g. In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.S.D.N.Y. 1989) (finding that a sound business justification existed for payment of prepetition wages).

11. The Debtor's proposed payment of the Employee Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." This section empowers the Court to issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Under § 105, the court can permit pre-plan payment of pre-petition obligation when essential to the continued operation of the debtor. *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr.E.D. Va. 1992).

12. The majority of the Debtor's Employees rely exclusively on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses and support their families. Consequently, these Employees will be exposed to significant hardship if the Debtor is not permitted to honor its obligations for Employee Compensation. Moreover, if the Debtor is unable to satisfy such obligations, Employee morale and loyalty will be jeopardized at a time when Employee support of the company is critical.

13. The Employees are critical to the continued operation of the Debtor. They perform a variety of jobs including securing and transporting grain inventory, overseeing contracts

with area farmers and suppliers and facilitating the sale grain by the Debtor. Even a short period of inadequate staffing places substantial perishable product at risk (including grain now held by the Debtor and raw product awaiting processing in the hands of farmers).

14. For all of these reasons, a sound business purpose exists to pay the Employee Obligations.  In the absence of such payments, the Debtor believes that its Employees make seek alternative employment opportunities, possibly with the Debtor's competitors.

B. **A Significant Portion of the Employee Obligations are Entitled to Priority Treatment.**

15. A significant portion of the Employee Compensation is entitled to priority treatment under 28 U.S.C. § 507(a)(4)(A)(giving priority to wages, salaries or commissions, including vacation…sick leave pay earned within 180 days prepetition).

16. The Debtor does not believe that any individual is entitled to Employee Compensation exceeding the priority cap of $12,850.

17. To confirm a Chapter 11 plan, the Debtor must pay priority claims in full.  *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries or commissions including vacation, severance and sick leave pay earned by an individual).

18. Thus, granting the relief sought by this Motion only affects the timing of payments to Employees and does not negatively impact recoveries for general unsecured creditors. Indeed, the Debtor submits that payment of Employee claims at this time enhances value for the benefit of the Debtors and all interested parties.

19. Further, payment of certain of the Employee Obligations, specifically the Payroll Taxes and Withholdings is required by law.  These amounts principally represent the Employee's earnings that governments, the Employees and judicial authorities have

designated for deduction from the Employees' paychecks. Certain Deductions, including child support and alimony payments are not property of the Debtor's estate because the Debtor has withhold such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. §541; *see also Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that debtors "do not own an equitable interest in property… [they] hold in trust for another" and that therefore funds held in trust are not property of the estate).

20. Because the Withheld Amounts and the Deductions are not property of the Debtor's estate, the Debtor requests that the Court authorize it to transmit these amounts to the appropriate parties in the ordinary course of business.

## JURISDICTION AND VENUE

21. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is located in Malheur County, so proper venue for this case is the District of Oregon. *See* Or. L.B.R. 5001-2(a)(1)(b) (requiring petitions in cases arising in Malheur County to be filed in the Portland office of the Bankruptcy Court for the District of Oregon). However, under a long standing arrangement approved by the United States Judicial Conference and the courts involved, the bankruptcy court in the District of Idaho exercises concurrent jurisdiction over cases arising in Malheur County.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003(B) ARE SATISFIED

22. Under Bankruptcy Rule 6003, the Court may grant the relief requested in this Motion because such relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to

reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990). Courts have held that irreparable harm exists where distractions to employees would burden the reorganization. *See Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 410 (S.D.N.Y. 2007).

## REQUEST FOR WAIVER OF STAY

23. To implement the forgoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## DEBTOR'S RESERVATION OF RIGHTS

24. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's right to dispute any claim, applicability of any law, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any claim, applicability of nay law, or an approval or assumption of any agreement or contract under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any invoice or claim with respect to any obligation described herein in accordance with applicable bankruptcy and non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

## RELIEF REQUESTED

By this Motion, the Debtor seeks entry of an Order authorizing it to pay prepetition claims, honor obligations and/or continue certain employee-related programs, in the ordinary course of business, including with respect to:

a.  Employee Compensation, including Unpaid Wages, Employee Draws, Reimbursable Expenses, Vacation Time and Sick Leave; and

b.  Deductions and Payroll Taxes (each, as defined herein)

c.  To enable the Debtor to carry out the relief requested, the Debtor also requests that the Court authorize all applicable banks, financial institutions to receive, process, honor and pay all checks presented for payment and all electronic payment requests made by the Debtor related to the Employee Obligations, whether such checks were presented or electronic payment requests were submitted prior to or after the petition date.

d.  To the extent any of the Debtor's Employees assert claims under the Worker's Compensation Program, the Debtors further request that the Court modify the automatic stay under § 362 of the Bankruptcy Code to permit such Employees to proceed with their claims under the Workers' Compensation Program. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

DATED this 18th day of April, 2017.

                                                     /s/  Matt Christensen
                                                   MATTHEW T. CHRISTENSEN
                                                   Attorney for Debtor

CERTIFICATE OF SERVICE

       I hereby certify that on the 18th day of April, 2017, a true and correct copy of the foregoing Motion was filed electronically and upon such filing the CM/ECF registered participants were served by electronic means as more fully reflected on the Notice of Electronic Filing. I further certify that on said date the twenty largest unsecured creditors (described further on the attached **Exhibit B**) and any parties listed below, were served by depositing copies thereof in the United States Mail with first-class postage prepaid, enclosed in envelopes addressed to said creditors at their respective addresses.

Rabo AgriFinance LLC
6919 Chancellor Drive
Cedar Falls, IA  50613
(*with a copy to Linda Kobliska,*
*Rabo's Deputy General Counsel, via email: linda.kobliska@raboag.com*)


                                                      /s/  Matt Christensen
                                                   Matthew T. Christensen

# EXHIBIT B

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **FARMERS GRAIN, LLC** |
| United States Bankruptcy Court for the: | **DISTRICT OF IDAHO** |
| Case number (if known): | |

☐ Check if this is an amended filing

# Official Form 204
## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders   12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Bruce Cruickshank<br>10572 Virginia Lane<br>Payette, ID 83661 | | COGS | | | | $137,398.80 |
| Connell Grain Growers<br>3132 Road O NE<br>Moses Lake, WA 98837 | | Services rendered | | | | $32,064.02 |
| Connell Grain Growers<br>3132 Road O NE<br>Moses Lake, WA 98837 | | Services rendered | Unliquidated<br>Disputed | | | $2,804,178.29 |
| DC Land-Mark Combs<br>Mark Combs<br>29863 Farmway Road<br>Caldwell, ID 83607 | | COGS | | | | $680,883.22 |
| DC Land-Mark Combs<br>Mark Combs<br>29863 Farmway Road<br>Caldwell, ID 83607 | | COGS | | | | $413,963.56 |
| Deseret Farms<br>Post Office Box 1585<br>Nyssa, OR 97913 | | COGS | | | | $206,448.74 |
| Doug Stipe<br>3555 Clark Blvd<br>Ontario, OR 97914 | | COGS | | | | $57,204.24 |
| Frahm Farm<br>Rod Frahm<br>418 King Avenue<br>Ontario, OR 97914 | | COGS | | | | $65,777.48 |

Debtor  **FARMERS GRAIN, LLC**  
Name

Case number *(if known)*

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|
| | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| Gavilon<br>1111 Bedke Boulevard<br>Post Office Box 1089<br>Burley, ID 83318 | | COGS | | | | $185,340.00 |
| Harlen Garner<br>1041 Janetta Ave<br>Nyssa, OR 97913 | | COGS | | | | $15,965.92 |
| Hartley Farms & Feedlot<br>552 Enterprise Avenue<br>Nyssa, OR 97913 | | COGS | | | | $292,512.31 |
| Jensen Farms, LLC<br>2436 11th Ave E<br>Vale, OR 97918 | | COGS | | | | $176,430.00 |
| Jim Belnap<br>1764 3rd Ave<br>Vale, OR 97918 | | COGS | Disputed | | | $37,413.00 |
| JLJ Farms, LLC<br>29862 Emmett Road<br>Caldwell, ID 83607 | | COGS | | | | $149,728.25 |
| Lansing Trade Group<br>815 Highway 26<br>Bliss, ID 83314 | | COGS | | | | $220,514.39 |
| Lansing Trade Group<br>815 Highway 26<br>Bliss, ID 83314 | | COGS | | | | $134,878.36 |
| Lansing Trade Group<br>815 Highway 26<br>Bliss, ID 83314 | | COGS | | | | $41,176.10 |
| MUA<br>Post Office Box 338<br>Montezum<br>Montezuma, KS 67867 | | Insurance | | | | $12,022.93 |
| Scott Cruickshank<br>1746 Pennington Drive<br>Ontario, OR 97914 | | COGS | | | | $26,242.96 |
| WBH Farms<br>743 Beet Dump Road<br>Nyssa, OR 97913 | | COGS | | | | $464,670.40 |